UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>THE BLACK & DECKER CORPORATION,<br>BLACK & DECKER, INC., BLACK & DECKER<br>(U.S.) INC., EMHART CORPORATION, and<br>EMHART INDUSTRIES, INC.,<br><br>Defendants. | C.A. No. 1:04-CV-10650-DPW<br>C.A. No. 1:04-CV-10671-DPW<br>C.A. No. 1:04-CV-10672-DPW |

**SUPPLEMENTAL MEMORANDUM REGARDING
ARKANSAS HEARING LOSS, MISSISSIPPI HEARING LOSS AND
MISSISSIPPI HAND/ARM VIBRATION LONG-TERM EXPOSURE CLAIMS**

This supplemental memorandum addresses recent developments pertinent to the Black & Decker summary judgment motion regarding the Arkansas Hearing Loss Claim (Civil Action No. 1:04-10650-DPW), Mississippi Hearing Loss Claim (Civil Action No. 1:04-10672-DPW) and Mississippi Hand/Arm Vibration Claim (Civil Action No. 1:04-10671-DPW) (collectively "Arkansas and Mississippi Claims"). Only Black & Decker has moved for summary judgment regarding these claims. After Black & Decker filed its motion, Liberty Mutual admitted it owed a duty to defend, but sought to limit its obligation on the basis of purported cost-sharing agreements. The last substantive submission regarding these claims was a Black & Decker memorandum dated January 12, 1999 ("January 1999 Submission"), with attached affidavits of Richard P. Kidwell, M. Clayton Roop and John Parker Sweeney. The January 1999 Submission and Black & Decker's prior submissions are collected in Volume 11 of the

Compendium of Selected Black & Decker Summary Judgment Filings, filed on September 27, 2002 in Civil Action No. 96-10904-DPW, pursuant to an Order dated September 11, 2002.

Following the January, 1999 filing, there were two developments. In February, 2002, Liberty Mutual made partial payments regarding these claims. Also, depositions were conducted that further demonstrate the absence of a factual basis for the claim of cost-sharing agreements.

## Background

The comprehensive summary judgment motion that Black & Decker filed in February, 1998 addressed, inter alia, the Arkansas and Mississippi Claims. In response, Liberty Mutual asserted that its obligations were limited by purported cost-sharing agreements that were never executed.[1] This assertion was supported by an affidavit of Alan Schlemmer dated December 4, 1998 ("Schlemmer Affidavit"),[2] which stated, in conclusory terms, that there had been oral cost sharing agreements (Schlemmer Aff.). A draft of the purported agreement regarding the Mississippi Hearing Loss Claim was circulated, but not executed; and there was not even a draft of the purported agreement concerning the Mississippi Hand/Arm Vibration Claim. The theory underlying the cost sharing agreements was that Black & Decker was "uninsured" for certain periods during which it was indisputably insured by Liberty Mutual. With respect to the Arkansas Hearing Loss Claim, which involved Farrel Policies, Liberty Mutual had asserted that

---

[1] A more detailed discussion appears in the January 1999 Submission, the text of which is attached hereto as Exhibit A.

[2] A copy of the text of Schlemmer Affidavit is attached hereto as Exhibit B.

it had not insured Farrel during the period 1964-1971 (Exs. C, D).[3] Actually Liberty Mutual had insured Farrel for each of those years and copies of those insurance policies were in its files and were produced during this litigation. See <u>Liberty Mutual Ins. Co. v. The Black & Decker Corp.</u>, Civil Action No. 96-10804-DPW, slip op. at 84, 88-89 (D. Mass. May 4, 2002). Mr. Schlemmer even admitted that Liberty Mutual insured Farrel for the entire period of purported non-insurance (Ex. B, ¶¶ 12-15). With respect to the two Mississippi claims, which involve Black & Decker policies, Liberty Mutual asserted that Black & Decker was "uninsured" for the period 1964-1970, although there is overwhelming evidence, including certificates of insurance, regarding the existence and terms of the policies that Liberty Mutual issued to Black & Decker throughout that period. See <u>Liberty Mutual Ins. Co. v. The Black & Decker Corp.</u>, Civil Action No. 96-10804-DPW, slip op. at 96-97 (D. Mass. May 4, 2002).

The February 2002 Payments

As of January 30, 2002, Liberty Mutual had not even paid[4] the amount that it admitted it owed (assuming its obligation were limited by the existence of the purported agreements) in connection with the Arkansas and Mississippi Claims. On that date, Black & Decker moved to supplement its counterclaim to add allegations that the conduct of Liberty Mutual in failing to defend Black & Decker in connection with five other long-term exposure claims,[5] was in

---

[3] Exhibits C and D were originally filed as Exhibits G and H to the Affidavit of M. Clayton Roop dated January 1999, filed in support of the January 1999 Submission.

[4] Prior to the commencement of this action, it had made some payments in connection with the two hearing loss claims which had been factored into Black & Decker's calculation of the outstanding balance.

[5] Those claims are the Abarca Bostik, Alwell Asbestos, Maritime Asbestos, Maritime Hearing Loss and Pennsylvania Benzene claims that are the subject of Civil Actions 1:04-CV-10648-DPW, 1:04-CV-10649-DPW, 1:04-CV-10668-DPW, 1:04-CV-10669-DPW and 1:04-CV-10676-DPW. Black & Decker has filed a supplemental submission regarding those claims herewith.

breach of contract and in violation of Mass. Gen. Laws c. 93A. It also moved to terminate the stay of discovery in connection with the pending Black & Decker claim that Liberty Mutual had acted in violation of Mass. Gen. Laws c. 93A and had failed to act in good faith. Liberty Mutual responded to those motions on February 13, 2002, asserting that it had paid its purported share of the defense costs in connection with the Arkansas and Mississippi Claims (as well as defense costs in connection with the other five long-term exposure claims). Those payments were made by checks dated February 12, 2002 (Ex. E) that Black & Decker did not receive until after Liberty Mutual filed its oppositions to the motions.

At the time of those payments, the Liberty Mutual liability for the Arkansas and Mississippi Claims was more than $2,500,000 in principal and more than $2,000,000 in prejudgment interest. Liberty Mutual paid only $673,601.38. Even after those payments, Liberty Mutual owes more than $3,900,000 in principal and pre-judgment interest. Interest on the unpaid principal balance continues to accrue. A chart showing the payments and amounts still due following the payments appears below[6].

| Claim | Principal Due as of 2/12/02 | Interest Accrued as of 2/12/02 | Payment on 2/12/02 | Total Unpaid as of 2/12/02 |
|---|---|---|---|---|
| Arkansas Hearing Loss | $ 616,119.95 | $ 493,078.26 | $ (47,565.50) | $ 1,061,632.71 |
| Mississippi Hearing Loss | $ 1,525,006.93 | $ 1,332,487.28 | $ (481,831.88) | $ 2,375,662.33 |
| Mississippi Vibration | $ 384,544.40 | $ 250,464.36 | $ (144,204.00) | $ 490,804.76 |
| **TOTAL:** | **$ 2,525,671.28** | **$ 2,076,029.90** | **$ (673,601.38)** | **$ 3,928,099.80** |

---

[6] The balance due with respect to each claim is documented in a schedule, listing each invoice, that was produced to Liberty Mutual. The schedules are attached as Exhibits F (Arkansas Hearing Loss Claim), G (Mississippi Hearing Loss Claim) and H (Mississippi Hand/Arm Vibration Claim).

Depositions Following The January, 1999 Submission

The January 1999 Submission demonstrated that the claim of purported cost sharing agreements was legally flawed due to the absence of consideration, the absence of an executed agreement (no proposed party other than Liberty Mutual executed the draft agreement), the absence of authority, the absence of performance and repudiation by Liberty Mutual.  The affidavits of John Parker Sweeney, Richard P. Kidwell and M. Clayton Roop, originally filed with the January 1999 Submission, established that the Schlemmer Affidavit contained inaccurate statements and that no representative of Black & Decker agreed to the proposal set forth in the draft agreement.  As Black & Decker stated in that submission, those affidavits establish the following:

- Mr. Kidwell did not agree to the purported cost-sharing agreement concerning the Mississippi Hearing Loss Claim and would not have recommended an agreement containing the provisions in the purported agreement signed by Mr. Schlemmer.

- Mr. Schlemmer claims he had a conversation with Mr. Kidwell concerning the Mississippi Hearing Loss Claim a year after Mr. Kidwell left Miles & Stockbridge for employment with Johns Hopkins University.

- The parties did not perform in accordance with the purported cost sharing agreement concerning the Mississippi Hearing Loss Claim as not a single insurer paid the amounts that would have been required under the purported agreement when requested to do so by ESIS.

- There is no writing purporting to confirm an agreement concerning the Mississippi Hand/Arm Vibration Claim.

- Mr. Sweeney did not discuss cost-sharing issues with Mr. Schlemmer, much less agree to the purported agreement concerning the Mississippi Hand/Arm Vibration Claim.

- Neither Liberty Mutual nor any insurer made any payment for Black & Decker's defense costs in the Mississippi Hand/Arm Vibration Claim.

Following the January 1999 Submission, depositions of Messrs. Schlemmer, Sweeney, Kidwell and Roop were conducted.[7] Those depositions buttress the January 1999 Submission and further demonstrate that Mr. Schlemmer's affidavit is insufficient even to raise an issue of fact regarding the existence of the purported cost-sharing agreements.

The Schlemmer Affidavit states that "[i]n late 1994 or early 1995, [Mr. Schlemmer] contacted Richard Kidwell of Miles & Stockbridge" and was informed that "if there were any more bills which needed to be paid, [Liberty Mutual] would be so informed" (Ex. B, ¶ 33). This assertion was apparently made in an attempt to account for the failure of Liberty Mutual to make any payments with respect to the Mississippi Hearing Loss Claim during the eight year period between February, 1994 (Ex. I)[8] and February, 2002 although Black & Decker continued to incur defense costs during that period (Ex. G). This purported conversation could not have taken place. Almost a year before the date of the conversation, Mr. Kidwell left Miles & Stockbridge for employment at Johns Hopkins Health System and no longer represented Black & Decker (Ex. J, ¶¶ 8-9).[9] At deposition, Mr. Kidwell confirmed this fact (Ex. K at 85:12-86:8; id. at 14:10-12, 27:6-8). When this issue was raised at Mr. Schlemmer's deposition, Mr. Schlemmer alternated between insisting that he believed he spoke with Mr. Kidwell at Miles & Stockbridge after Mr. Kidwell had ceased working at that law firm and

---

[7] Excerpts from the April 26, 2001 deposition of Mr. Schlemmer ("Schlemmer Deposition") are attached hereto as Exhibit L. Excerpts from the April 18, 2001 deposition of Mr. Sweeney ("Sweeney Deposition") are attached hereto as Exhibit W. Excerpts from the January 8, 2002 deposition of Mr. Kidwell ("Kidwell Deposition") are attached hereto as Exhibit K. Excerpts from the April 3, 2001 deposition of Mr. Roop ("Roop Deposition") are attached hereto as Exhibit P.

[8] Exhibit I was Exhibit 7 to the Schlemmer Deposition.

[9] Exhibit J (the Affidavit of Richard M. Kidwell dated January 6, 1999) was originally filed in support of the January 1999 Submission.

6

speculating that he spoke to an unidentified individual who answered the telephone at Mr. Kidwell's former telephone number (Ex. L at 197:24-205:16; see also id. at 82-84).

In his deposition, Mr. Schlemmer admitted that the statement in his affidavit that there was an oral cost-sharing agreement regarding the Mississippi Hearing Loss Claim was based upon his characterizations of conversations. He could not paraphrase the conversations, state what was said to manifest agreement, produce documents to corroborate his interpretation or even state when the purported conversations occurred (Ex. L at 107:21-109:8, 111:1-113:18, 117:14-122:24). Mr. Schlemmer's interpretation of events is contradicted by contemporaneous documents, as well as Mr. Kidwell's testimony. Mr. Schlemmer asserted that the "agreement," pursuant to which Black & Decker would have deemed itself uninsured for the period 1964-1970, was made by August 5, 1992 (Ex. L at 118:15-23). Yet, on August 6, 1992, Mr. Kidwell wrote that "[w]e are still negotiating with Liberty Mutual about the 1964-1970 period" (Ex. M).[10] Other documents written earlier that summer reflect attempts to set up meetings to negotiate this issue (Exs. N, O).[11] Consistent with the documentary evidence, Mr. Kidwell testified that he never agreed to the proposed agreement because it would have prevented Black & Decker from receiving payment for the 1964-1970 period in which it was insured by Liberty Mutual (Ex. K at 51:8-10 ("that would have been sticking Black & Decker with costs for which they were not responsible"); see generally id. at 50-52, 66, 88-89, 92-94). Mr. Kidwell did not agree to such an arrangement in view of "what [he] was convinced and was in [his] mind clear and convincing, the evidence that [Liberty Mutual] covered Black & Decker from '64 to '70"

---

[10] Exhibit M was Exhibit 5 to the Schlemmer Deposition.

[11] Exhibits N and O were Exhibits 3 and 6 to the Schlemmer Deposition.

(Ex. K at 72:9-12).  There was "a continuous back and forth" between Liberty Mutual and Black & Decker concerning the responsibility of Liberty Mutual for the 1964-1970 time period (Ex. K at 68:14-19; see generally id. at 65-69).  Mr. Kidwell also explained that the proposed agreement contained inconsistent provisions regarding whether allocations were final that rendered it too poorly drafted to be executed (Ex. K at 50:10-52:3).

Mr. Roop also testified that he made no such agreement (Ex. P at 53:14, 85:1-15, 102:4-103:9).  He testified that he would not have considered recommending an agreement which assigned responsibility to Black & Decker for the years 1964-1970 (id. at 99:4-8; see also id. at 90:10-16).  He further testified that neither he nor Mr. Kidwell was authorized to enter into such an agreement on behalf of Black & Decker (id. at 87:1-88:13), and that ESIS, a claim administrator, was not authorized to enter into such an agreement (id. at 91:23-92:9).  Mr. Roop also explained that when he received the written proposal, Mr. Kidwell advised him that Black & Decker should not enter into the agreement (Ex. P at 75:19-76:1), presumably because the proposed agreement unreasonably sought to make Black & Decker pay for period in which it was insured by Liberty Mutual.

There is other documentary evidence that there was no such agreement.  Neither Black & Decker nor any insurer other than Liberty Mutual was willing to execute this purported agreement.  The draft agreement was first circulated on August 5, 1992.  Counsel for The London Insurers, who would have been responsible for 12.5% (Ex. Q),[12] immediately responded that it "was unable to take any action with respect to [the proposed agreement]" and

---

[12]  Exhibit Q was originally filed as Exhibit D to the Schlemmer Affidavit.

8

cited the "insolvencies of many of its members" (Ex. R; see also Ex. M).[13] Another insurer, Home, sought to change its percentage from 12.5% to 4.17% (Ex. S, ¶ 12, Ex. T).[14] Further, as pointed out at pp. 8-10 of the January 1999 Submission, none of the insurers paid its purported share of invoices regarding the matter during the brief period (ending in December 1993) in which invoices were forwarded to the insurers. The difference between the amounts that would have been payable by the insurers, as reimbursement for the payments that ESIS made as Black & Decker's administrator, under the purported "agreement" and the amounts the insurers actually paid is as follows:

| Insurer | Percentage | Amt. Payable | Amt. Paid to ESIS |
| --- | --- | --- | --- |
| Liberty Mutual | 37.5% | $ 163,448.35 | $ 158,214.00 |
| Home/Hartford | 12.5% | $ 54,482.80 | $ 9,546.00 |
| London Insurers | 12.5% | $ 54,482.80 | $ 0.00 |
| Twin Cities | 4.0% | $ 18,461.32 | $ 14,022.00 |

(Ex. S, ¶ 8, Ex. U).[15]

The Schlemmer Affidavit is particularly inaccurate and illogical when he asserts that the purported cost sharing agreement regarding the Mississippi Hearing Loss Claim was extended to the Mississippi Hand/Arm Vibration Claim. Notice of the Mississippi Hand/Arm Vibration Claim was not provided until February 1994 (Ex. V),[16] after invoices concerning the Mississippi Hearing Loss Claim were last provided to insurers. That date was after the insurers

---

[13] Exhibit R was Exhibit 4 to the Schlemmer Deposition.

[14] Exhibit S (the Roop Affidavit) was originally filed in support of the January 1999 Submission, and Exhibit T was filed as Exhibit E to the Roop Affidavit..

[15] Exhibit U was originally filed as Exhibit A to the Roop Affidavit.

[16] Exhibit V was originally filed as pages 72-73 of Volume XXVII of the Appendix to Defendants' Motion for Partial Summary Judgment in February 1998.

had demonstrated an unwillingness to perform in accordance with the purported agreement. See January 1999 Submission, at 9-11. Once again, deposition testimony demonstrates that the Schlemmer Affidavit is false. During his deposition, Mr. Schlemmer could not provide any testimony beyond his impressions concerning the meeting in which he asserted that either John Parker Sweeney or Clayton Roop agreed to extend the purported agreement regarding the Mississippi Hearing Loss Claim to the Mississippi Hand/Arm Vibration Claim. His deposition demonstrated that he had a "belief" "that everybody was in agreement" (Ex. L at 76:4-77:15) without being able to recall any conversation or gesture that formed the basis for his belief (id. at 69:23-78:15, 166:23-170:8).[17] Mr. Sweeney explained that he never discussed any cost sharing agreements between Black & Decker and its insurers (Ex. W at 102:22-105:19; see also id. at 16:10-17:20 and Ex. X, ¶¶ 5-7).[18] Mr. Roop's affidavit (Ex. S, ¶¶ 5-9) is to the same effect. Mr. Roop never saw Mr. Schlemmer at the occasion in which Mr. Schlemmer asserts an agreement was made regarding the Mississippi Hand/Arm Vibration matter (Ex. P at 102:4-103:9). Further, a contemporaneous letter refers to the absence of such an agreement (Ex. Y (a September 13, 1994 document stating "[a]s to the cost sharing arrangement on the vibration claims if any, I am still awaiting word from Black & Decker's corporate counsel, Miles & Stockbridge")).[19]

Other statements in Mr. Schlemmer's affidavit have been proven false. In paragraph 38, Mr. Schlemmer asserts that Liberty Mutual made payments concerning the Mississippi

---

[17]   Mr. Schlemmer also referred to having "understanding" or "opinion" that there was an agreement (Ex. L at. 169:13-21).

[18]   Exhibit X (the Affidavit of John Parker Sweeney dated January 7, 1999) was originally filed in support of the January 1999 Submission.

Hand/Arm Vibration Claim. However, the Liberty Mutual records (Ex. I) indicate that the only payments it made concerning either Mississippi claim was the $157,754.17 that Mr. Schlemmer stated was paid for the hearing loss claim (Ex. B, ¶ 16). Those payments were made prior to notice being provided of the vibration claim (Ex. I, with the latest check dated February 22, 1994, less than three weeks after notice of the vibration claim). Mr. Schlemmer's assertion that invoices did not indicate whether work concerned the Mississippi Hearing Loss Claim or the Mississippi Hand/Arm Vibration Claim (Ex. B, ¶ 36; Ex. L at 174:7-11) is false. Attached as Exhibit Z are the first and last invoices of Miles & Stockbridge and Forman, Perry, Watkins & Krutz, the two firms that represented Black & Decker in connection with the Mississippi Hand/Arm Vibration Claim, each clearly referring to the matter as the vibration claim.

## CONCLUSION

Liberty Mutual admittedly did not pay what it deems to have been its share of the costs in connection with the Mississippi and Arkansas Claims until February 2002, long after payment was due. Even after those payments, there is a considerable unpaid balance. Liberty Mutual has not established that there is even a material issue of fact as to the existence of a cost sharing agreement applicable to either Mississippi claim. As to the Arkansas claim, the issue of cost sharing is irrelevant. Liberty Mutual admitted that it is responsible for the "share" that had been assigned to Black & Decker. Liberty Mutual is liable for the unpaid principal and interest. Pacific Insurance Co. v. Eaton Vance Management, 260 F. Supp. 2d 334, 346 (D. Mass. 2003) ("Because the goal of prejudgment interest is to compensate the prevailing party for the loss of use of money that rightfully belonged to it, there is no reason [the insurer] should

---

[19]    Exhibit Y was originally filed as Exhibit F to the Roop Affidavit.

be able to avoid prejudgment interest merely by paying the disputed amount before the court issues a judgment as to damages"). No additional defense costs are anticipated. Judgment should enter for Black & Decker on its claims for breach of contract and declaratory relief. The only task remaining is the calculation of the appropriate amount of interest owed for each of these claims.

The conduct of Liberty Mutual regarding the Arkansas and Mississippi Claims also bears on the Chapter 93A claim, but that aspect should be addressed in the separate action concerning the Chapter 93A claim.

By their attorneys,

 /s/Richard L. Binder            .
Jack R. Pirozzolo BBO# 400400
Richard L. Binder BBO# 043240
Willcox, Pirozzolo & McCarthy
Professional Corporation
50 Federal Street
Boston, Massachusetts 02110
(617) 482-5470