# EXHIBIT Q

## INTERIM COST SHARING AGREEMENT FOR MISSISSIPPI HEARING LOSS LITIGATION

This agreement, entered into by and among the Parties, effective August 31, 1992, shall be known as the "Agreement."

I. **PARTIES**

The Parties ("Parties") to this Agreement are:

A. Black and Decker, a Maryland corporation whose principal place of business is Towson, Maryland (hereinafter Black and Decker);

B. Employers Self Insured Service, a CIGNA company whose principal place of business is Philadelphia, Pennsylvania (hereinafter ESIS);

C. Home Insurance Company, a Pennsylvania corporation whose principal place of business is Philadelphia, Pennsylvania (hereinafter Home);

D. Twin Cities Insurance Company, a Hartford company, whose principal place of business is Simsbury, Connecticut (hereinafter Twin Cities);

E. Liberty Mutual Insurance Company, a Massachusetts corporation whose principal place of business is Boston, Massachusetts (hereinafter Liberty Mutual);

F. London Market Insurers, whose principal place of business is London, England (hereinafter London Insurers).

The preceding Parties listed in paragraphs I.C to I.F are hereafter referred to collectively as the "Carriers."

Interim Agreement

## II. RECITALS

WHEREAS, Black and Decker has been named as a Defendant in several lawsuits in Mississippi initiated by Plaintiffs who allege they suffered permanent hearing loss resulting from exposure to pneumatic and electric tool noise at Ingall's shipyard (hereinafter called Hearing Loss Claims), and

WHEREAS, There may be future lawsuits filed in Mississippi resulting from exposure to pneumatic and electric tool noise at Ingall's shipyard, and

WHEREAS, Black and Decker is one of many defendants who allegedly manufactured, sold, handled or distributed these tools, and

WHEREAS, Black and Decker was a named insured under policies of liability insurance issued or alleged to have been issued by the "Carriers" for certain specific policy periods as set forth in Exhibit A annexed hereto, and

WHEREAS, the parties to this Agreement disagree as to which, if any, of the insurance policies issued by the Carriers are applicable to and would include coverage for the various Hearing Loss Claims, and

WHEREAS, all of the parties to this Agreement have differing positions on various questions of insurance coverage for Hearing Loss Claims and their respective rights and duties under insurance policies that were or allegedly were issued to Black and Decker, all of which positions are maintained in

Interim Agreement

good faith, and

WHEREAS, by this Agreement the parties intend to adopt, by way of compromise and accord and without prejudice to or waiver of their respective positions in this and other matters, a mechanism for allocating the responsibility for defense costs and indemnity payments, with respect to pending Hearing Loss Claims for the life of this Agreement:

NOW, THEREFORE, in consideration of the foregoing and of the mutual promises contained in this Agreement and intending to be legally bound, the Parties agree as follows:

III. DEFENSE COSTS

Each Carrier and Black and Decker agrees to pay, on an interim basis, a pro-rata share of the defense costs, as follows:

| | |
|---|---|
| Black and Decker through ESIS | 33.5% |
| Home Insurance | 12.5% |
| Twin Cities | 4.0% |
| Liberty Mutual | 37.5% |
| London Insurers | 12.5% |
| TOTAL | 100% |

The percentages set forth above represent that each Carrier and Black and Decker will assume a pro-rata share of the total cost of defense of Hearing

3

Interim Agreement

Loss Claims. Henceforth, these percentage shares will be referred to as the "Contribution Percentage."

For purposes of this Agreement, Black and Decker will be deemed to the self-insured for any period during which it was uninsured or for any period during which coverage cannot be proven to exist or for any period during which the insurance policy limits of all applicable policies are exhausted.

IV. **DEFINITIONS FOR THE PURPOSE OF THIS AGREEMENT**

   A. "Agreement" means the "Interim Cost Sharing Agreement For Mississippi Hearing Loss Litigation."

   B. "Hearing Loss Claims" means those claims or lawsuits, or portions of claims or lawsuits, filed in Mississippi, which seek monetary damages or other monetary relief from Black and Decker for bodily injury which are alleged to have been caused, in whole or in part, by noise from pneumatic and electric tools allegedly manufactured, sold, distributed or handled by Black and Decker. This Agreement does not apply to suits for damage to or destruction of property, or claims for compensation by an employee against the employer-insured, or to suits seeking recovery based on alleged intentional acts or conduct of Black and Decker.

   C. "Defense Costs" covered by this Agreement mean all expenses in connections with the defense of Black and Decker in the Hearing Loss Claims covered hereunder which are directly allocated or attributable to those cases or directly for the benefit of the

Interim Agreement

defense of those cases, including, but not limited to, investigative expenses, attorneys' fees and expenses, court costs, expert and other witness fees and copying costs. "Defense Costs" do not include, however, any unallocated expenses, such as general overhead, administrative or internal expense, nor do they include any fees, costs or expenses incurred directly by the Insured for the management or general administration of the Hearing Loss Claims. "Defense Costs" do not include any expenses for fees incurred by Black and Decker in connection with its efforts to identify, secure, enforce or interpret coverage under a policy of insurance.

D.   "Effective Date" means August 31, 1992.

## V. TERM OF AGREEMENT

The term of the Agreement is two years following the Effective Date. Thereafter, the Agreement shall continue for successive one (1) year terms, unless one of the parties notifies the other parties, in writing, no less than sixty (60) days prior to the end of the initial two (2) year term or any successive one (1) year term, of its intention to terminate the Agreement. In the event that such notice is given, the Agreement will expire or terminate at the conclusion of the initial two-year term or successive one-year term, as the case may be, upon consent of the Parties. The Parties will continue under the same terms or modify the agreement, as the case may be.

Interim Agreement

Notwithstanding the expiration or termination of this Agreement, the cost of defense of all Hearing Loss Claims instituted prior to the expiration or termination date of this Agreement will be handled, managed and paid for, pursuant to the terms of this Agreement, to conclusion.

## VI. TERMINATION OF A CARRIER'S OBLIGATION

Should policy limits on all policies issued by any one carrier be exhausted, that carrier shall provide written notice of same to all Parties and shall have no further obligations under this Agreement. ESIS shall provide prompt written notice of said Carrier's withdrawal. Upon tendering written notice of exhaustion of policy limits said Carrier is relieved of all duties and responsibilities of any nature under this Agreement.

Likewise, any pro-rata share of defense costs that said Carrier would have been assessed but for exhaustion of its policy limits shall be tendered to the Carrier or Carriers affording excess coverage for that policy period. Should there be no applicable excess coverage, or should said Carrier refuse to assume responsibility for such payments, then the insured shall be deemed to be self-insured for said policy period and shall assume the pro-rata allocation for said period.

## VII. DUTIES OF DEFENSE COORDINATOR

The Defense Coordinator (ESIS) shall manage the defense of Hearing Loss Claims against Black and Decker and shall do so in the best interests of Black and Decker. The parties agree that ESIS will be the Defense

Interim Agreement

Coordinator. ESIS can resign from that position after providing 60 days written notice to the other Parties.

### VIII. SCOPE OF AGREEMENT

This Agreement is limited to the defense costs of Hearing Loss Claims filed in Mississippi against Black and Decker.

### IX. RESERVATION OF RIGHTS

Each party reserves all rights that it had prior to the effective date of this Agreement. This Agreement creates no rights or obligations in any person or entity including the parties hereto, as to any policy or alleged policy of insurance issued by any Carrier or any predecessor thereof. Payments for defense of Hearing Loss Claims made pursuant to this Agreement shall be final and will not be reallocated. (Notwithstanding the fact that such payments will not be reallocated, it is agreed that payment of a particular share by any party under this Agreement in no way constitutes any kind of evidence or admission that that share or any share is owed under the alleged policies.)

### X. NO ADMISSION, NO EVIDENCE

Neither this Agreement, nor any act done or omission suffered in reliance thereon, shall be construed as an admission, nor shall it prejudice any right of any party, nor be admissible into evidence in any action or proceeding to construe or establish the existence of insurance coverage, except to enforce the provisions hereof.

7

Case 1:04-cv-10672-DPW   Document 3-18   Filed 04/16/2004   Page 9 of 11
MAY 06 '96 13:25 FR LIBERTY MUTUAL                TO 16179519151        P.09/11

Interim Agreement

## XI. CHANGES

The Parties will review the Agreement on a semiannual basis. Any change, modification, deletion or addition to this Agreement must be in writing and signed by each Party.

## XII. CONFIDENTIALITY

This Agreement and its implementation are confidential and will not be disclosed other than to reinsurers or pursuant to a Court Order or by agreement of the Parties.

## XIII. INTERPRETATION AND ENFORCEMENT

This Agreement is not a contract of insurance, and the Parties agree that it shall not be interpreted according to the rules of construction applicable to insurance contracts. This Agreement is the product of arm's length negotiations between the Parties regarding a compromise of disputed claims, and no Party shall be deemed to be the drafter of any provision or of the entire Agreement.

## XIV. NOTICES

Any notice required to be given hereunder shall be sent in writing to the following:

    Richard Kidwell, Esquire
    Miles and Stockbridge
    600 Washington Avenue
    Towson, MD 21204

    M. Clay Roop, Jr., Director, Risk Management
    Black and Decker
    701 E. Joppa Road
    Towson, MD 21204

Interim Agreement

Linda McCroddan, Sr. Claim Representative
ESIS, Inc.
P.O. Box 18
Columbia, MD 21045

Jeanne Mathis, Claims Supervisor
Hartford Insurance Group
Twin Cities Fire Insurance Company
200 Hopmeadow Street
Simsbury, CT 06070

Robert Pantano
Home Insurance Company
One Independence Mall
Philadelphia, PA 19106

Edward Manganiello, Esquire
Mendes and Mount
Three Park Avenue
New York, NY 10016-5902

Alan D. Schlemmer
Examiner, Special Claims
Liberty Mutual
100 Main Street
Dover, New Hampshire 03820-1525

Michael Margiotta, Sr. Claims Consultant
Alexander and Alexander, Inc.
111 Market Place
Baltimore, MD 21202

## XV. EXECUTION IN COUNTERPARTS

This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original and all of which taken together shall be deemed to be one and same instrument.

ATTEST:                                          BLACK AND DECKER

_____      BY: _____

                                                 DATE: _____

Interim Agreement

ATTEST:                                      ESIS, Inc.

_____        BY:   _____
                                      DATE: _____


ATTEST:                                      TWIN CITIES FIRE INSURANCE CO.

_____        BY:   _____
                                      DATE: _____


ATTEST:                                      HOME INSURANCE COMPANY

_____        BY:   _____
                                      DATE: _____


ATTEST:                                      LONDON MARKET INSURERS

_____        BY:   _____
                                      DATE: _____


ATTEST:                                      LIBERTY MUTUAL INSURANCE CO.

_/s/ Jerry McDeat_____        BY:   _/s/ Alan D. Schlemmer_____
                                             ALAN D. SCHLEMMER
                                      DATE: NOV 3, 1992