# EXHIBIT W

```
                                              Volume:  I
                                              Pages:  122
                                              Exhibits: 5

              UNITED STATES DISTRICT COURT

                DISTRICT OF MASSACHUSETTS


   LIBERTY MUTUAL INSURANCE
   COMPANY,
                         Plaintiff
                                              Docket No.
               vs.                            96-10804-DPW

   THE BLACK & DECKER CORPORATION,
   BLACK & DECKER, iNC., BLACK &
   DECKER (U.S.), INC., EMHART
   CORPORATION and EMHART, INC.,
                         Defendants


           DEPOSITION of JOHN PARKER SWEENEY, a
   witness called by and on behalf of the Plaintiff,
   taken pursuant to the Federal Rules of Civil
   Procedure, before Cynthia F. Stutz, Court Reporter
   and Notary Public in and for the Commonwealth of
   Massachusetts, at the offices of Holland & Knight,
   LLP, 10 St. James Avenue, Boston, Massachusetts, on
   Wednesday, April 18, 2001, commencing at 9:09 a.m.
```

RECEIVED APR 30 2001 Willcox, Pirozzolo & McCarthy

HENNESSEY CORP. d/b/a ROBERT H. LANGE COMPANY
50 Congress Street
Boston, Massachusetts 02109
(617) 523-1874

```
 1   deposition?
 2        A.   Mostly to familiarize myself with the give
 3   and take of questioning in this case, the kinds of
 4   issues that counsel were exploring.
 5        Q.   Have you ever met Mr. Schlemmer before?
 6        A.   Yes.
 7        Q.   On how many occasions have you met Mr.
 8   Schlemmer?
 9        A.   I can't say how many times.
10        Q.   Do you recall the circumstances of you
11   meeting Mr. Schlemmer?
12        A.   I first met him in connection with
13   meetings of the oversight committee for the
14   Mississippi Hearing Loss cases that were held in
15   New Orleans.  I believe that would have been late
16   1992 or early 1993.
17        Q.   Do you recall when it was that you next
18   met Mr. Schlemmer after that?
19        A.   I probably met him at two or three of
20   those meetings.
21        Q.   And when you say two or three of those
22   meetings, those would be meetings of the oversight
23   committee for the Mississippi Hearing Loss
24   litigation?
```

```
 1      A.    Meetings that were held in New Orleans,
 2   yes.
 3      Q.    Other than meetings in connection with
 4   that oversight committee for the Mississippi
 5   Hearing Loss litigation, have you had any other
 6   meetings with Mr. Schlemmer that you recall?
 7      A.    Not meetings with Mr. Schlemmer, but I
 8   have been at meetings that Mr. Schlemmer also
 9   attended, if I may make that distinction.  The next
10   one I recall was sometime in the 1993, '94 period
11   in Dallas, Texas.  It was a meeting of the
12   oversight committee in connection with the Lone
13   Star Steel litigation and I believe Mr. Schlemmer
14   attended that meeting, as well.
15      Q.    And have you had any other occasions where
16   you have been present at the same meeting with Mr.
17   Schlemmer following that?
18      A.    The only other meeting with Mr. Schlemmer
19   that I can recall was at our offices, I believe, in
20   1999.
21      Q.    With respect to the -- Actually, we'll
22   return to this subject matter of these meetings,
23   but with respect to Mr. Malter's deposition, do you
24   recall the subject matter of the parts of that
```

1  other three defendants that were participating with
2  Black and Decker in the shared counsel arrangement
3  had outside counsel other than their Mississippi
4  counsel, a number of the other defendants,
5  particularly the defendants for the larger
6  companies, the larger companies had outside
7  separate counsel in addition to their local
8  Mississippi counsel actively involved in the cases.
9      Q.  I'm now referring back again to the packet
10 that we had marked as the Exhibit Number 3 and
11 picking up  --
12             MR. PIROZZOLO:  What page?
13             MR. DUFFY:  Basically, where we had
14 left off at Bates number 99-1173 and continuing on
15 99-1175.  I'm actually going to go next to the next
16 document in order, beginning at 99-1176.  It's the
17 September 29, 1994 letter to Ms. Brady at Liberty
18 Mutual from Gary Duvall and it indicates a cc. to
19 you.  Do you recall this letter?
20     A.  No.  I see my name as a cc. and I'm sure I
21 received it in the normal course.
22     Q.  In the second paragraph on the first page
23 it indicates, "The 27% under the cost sharing
24 agreement proposed by the insurance carriers which

1   was to be assessed to Black & Decker has now been
2   confirmed to be the responsibility of Liberty
3   Mutual results in the following legal fees being
4   owed to each of the above firms," and then it goes
5   on.  Do you know what the cost sharing agreement
6   proposed there is referring to?
7       A.  Well, as I said before in response to a
8   similar question earlier, there was a lot of
9   discussion and correspondence back and forth among
10  Black & Decker's carriers about this litigation and
11  how they would allocate among themselves the costs
12  and I don't believe that a final agreement was ever
13  reached.
14      Q.  Did you have any participation in those
15  discussions?
16      A.  No.
17      Q.  Did you have any participation in any
18  discussions regarding cost sharing in the
19  Mississippi Hearing Loss litigation this letter
20  referencing the Arkansas Hearing Loss litigation?
21      A.  Without reference to this letter?
22      Q.  Yes, sir.
23      A.  Did I have discussions about?
24      Q.  Cost sharing concerning the Mississippi

```
 1   Hearing Loss litigation.
 2       A.   I'm not sure now about what you mean by
 3   cost sharing.  Cost sharing of Black & Decker's
 4   costs among its carriers, among the joint defense
 5   fund or among the shared counsel arrangement?  It's
 6   confusing and I don't want the record to be
 7   confused.
 8       Q.   Okay.  Right now I'm referring to not the
 9   cost sharing, the joint defense cost sharing, but
10   I'm referring to the cost sharing among Black &
11   Decker's insurance carriers and potentially also
12   including Black & Decker in the cost sharing
13   arrangement.
14            MR. PIROZZOLO:  Can I ask you to
15   just frame the question, please?
16            MR. DUFFY:  I'm framing it.
17            MR. PIROZZOLO:  Okay.  Frame one
18   question.  You just told him what you were talking
19   about.  Just frame a question, I'd appreciate it,
20   so the record will be clear.
21            MR. DUFFY:  I'm trying to frame the
22   question, Jack.
23            MR. PIROZZOLO:  Okay, go ahead.
24            MR. DUFFY:  You know when I finish a
```

1   question, you can interpose an objection if you
2   have a problem with it, but --
3              MR. PIROZZOLO:  Okay.
4       Q.  The issue is and the question is with
5   respect to the Mississippi Hearing Loss litigation
6   did you participate in any discussions regarding
7   cost sharing for the cost of that litigation that
8   would be allocated to Black & Decker under the
9   joint defense agreement, did you have any
10  discussions concerning, by the Liberty Mutual or
11  Black & Decker's other carriers and potentially
12  Black & Decker itself would pay the cost of that
13  joint defense?
14             MR. PIROZZOLO:  Objection.
15      A.  I don't recall any such discussion and I
16  did not become involved in any discussion with
17  Black & Decker's carriers with respect to cost
18  sharing among them or Black & Decker in the
19  Mississippi Hearing Loss litigation.
20      Q.  Earlier we discussed the, your opinion
21  with respect to the reasonableness of the
22  attorneys' fees charged by local counsel in the
23  long-term exposure claims.  With respect to the
24  Arkansas Hearing Loss litigation matter do you know