UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>THE BLACK & DECKER CORPORATION,<br>BLACK & DECKER, INC., BLACK & DECKER<br>(U.S.) INC., EMHART CORPORATION, and<br>EMHART, INC.,<br>Defendants. | CIVIL ACTION<br>No. 1:04-CV-10650-DPW<br>No. 1:04-CV-10671-DPW<br>No. 1:04-CV-10672-DPW |

**LIBERTY MUTUAL'S RESPONSE TO SUPPLEMENTAL
MEMORANDUM REGARDING ARKANSAS HEARING LOSS,
MISSISSIPPI HEARING LOSS AND MISSISSIPPI
HAND/ARM VIBRATION LONG-TERM EXPOSURE CLAIMS**

Plaintiff, Liberty Mutual Insurance Company ("Liberty Mutual"), responds to Black & Decker's supplemental memorandum regarding the Arkansas Hearing Loss, Mississippi Hearing Loss and Mississippi Hand/Arm Vibration Long-Term Exposure ("LTE") claims by stating that the submission is unnecessary and is merely an attempt to obscure an otherwise clear contract issue presented to the Court previously.[1] At best, Black & Decker's memorandum is merely an attempt to confuse immaterial facts as they related to the LTE claims. As has been expressed in previous pleadings, any minor factual dispute related to the origination of cost-

---

[1] Further, contrary to Black & Decker's assertion, Liberty Mutual is entitled to summary judgment with respect to the LTE claims, as has been described in previous pleadings, since there is no issue of material fact with respect to these claims.

sharing agreements is irrelevant as the parties have acted in accordance with those contracts.[2] Moreover, Black & Decker has not offered any new facts or case law in its submission, but rather makes a deliberate effort to distort the record to avoid summary judgment entering on behalf of Liberty Mutual.

The only issue properly before this Court regarding these three LTE claims is whether there is a dispute between the parties with respect to Liberty Mutual's obligation to pay defense costs as to these LTE claims. Black & Decker has acknowledged that a cost-sharing agreement exists with respect to the Arkansas Hearing Loss, Mississippi Hearing Loss, and Mississippi Hand/Arm Vibration LTE claims. In fact, Black & Decker previously informed the Court that along with its insurers it "allocated defense costs [for the Arkansas claims] pursuant to cost sharing agreements, with each insurer paying in proportion of the percentage of the exposure period for which it provided coverage." Memorandum of Black & Decker in Support of Motion for Partial Summary Judgment at p. 60. (Relevant portion attached hereto as Exhibit D.) Further, Black & Decker has recognized that Liberty Mutual made payments in connection with the Mississippi Hearing Loss claim pursuant to a cost sharing agreement comparable to the Arkansas Hearing loss claim arrangement. Id. at p. 63. Liberty Mutual also has acknowledged an obligation to defend, and has made payments to, Black & Decker in connection with

---

[2] Accordingly, Liberty Mutual will not repeat its arguments set forth in its March 2, 1998, May 20, 1998 and September 11, 2002 submissions regarding the LTE claims but incorporates them herein, and attaches the relevant portions of these pleadings as Exhibits A, B and C.

the Mississippi Hand/Arm Vibration claims, a fact recognized in Black & Decker's memorandum. Through these cost-sharing agreements, Liberty Mutual has agreed to provide a defense to Black & Decker with respect to each of these LTE claims. The existence of these agreements, and the actions of the parties consistent with these agreements, provide all the background necessary to resolve the only issue properly before the Court.

Notwithstanding the clear facts, Black & Decker engages in an unnecessary analysis of deposition testimony and documents wholly unrelated to the issue before the Court. Black & Decker presents an argument that disregards its previous admission of the existence of the cost-sharing agreements, fails to account properly for the payments made by Liberty Mutual pursuant to those agreements, and focuses largely on alleged irrelevant inconsistencies in the deposition testimony and affidavits of various witnesses and particularly of Liberty Mutual employee Alan Schlemmer. If the issues presented in Black & Decker's memorandum had any relevance, the facts presented are inaccurate and misconstrued.

None of the testimony and affidavits offered by Black & Decker can overcome Black & Decker's previous representations that cost sharing agreements for these LTE claims were entered into among Liberty Mutual, Black & Decker and various other insurance carriers. Black & Decker's lengthy discussion of Mr. Schlemmer's deposition, at best, alleges that Mr. Schlemmer's recollection of certain non-material facts, including the sequence of the negotiations of the cost-sharing agreements could be mistaken. Black & Decker attempts to create an argument

that the cost-sharing agreements do not exist based on misleading excerpts from Mr. Schlemmer's testimony, and the affidavits and testimony of employees of Black & Decker and its agents. This argument, however, is not supported by the facts.

First, Mr. Schlemmer's affidavit and deposition testimony refer to the cost-sharing agreement for the Arkansas Hearing Loss LTE claim. At the time the parties negotiated the agreement, Delores Ladd was a Senior Regional Analyst in Aetna's Southeastern Environmental Claims Office. Ms. Ladd composed a letter in July, 1992 that outlined a cost-sharing agreement between the various carriers. (Attached hereto as Exhibit E.) A subsequent letter from Ms. Ladd dated March 15, 1993 addresses Liberty Mutual's proper share of defense costs under the cost-sharing agreement. (Attached hereto as Exhibit F.) Thus, based on the contemporaneous correspondence as well as its own previous admission, it is pointless for Black & Decker to deny that a cost-sharing agreement exists with respect to the Arkansas Hearing Loss LTE claim.

Similarly, there is documented evidence that a cost-sharing agreement exists with respect to the Mississippi LTE Claims. Linda McCroddan was the Senior Claim Representative at ESIS, Inc. when the parties considered a cost-sharing agreement related to the Mississippi LTE claims. In a letter dated November 15, 1991, Ms. McCroddan indicated that ESIS would coordinate the defense of the Mississippi Hearing Loss Claim on behalf of Black & Decker. (Attached hereto as Exhibit G.) Subsequently, on June 18, 1993, Ms. McCroddan wrote to various insurance company representatives indicating that ESIS, on behalf of Black &

Decker, had made additional payments for defense costs and setting out the amount owed by each carrier pursuant to "our cost-sharing agreement." (Attached hereto as Exhibit H.) Later, on December 28, 1993, Gordon Clifford, a Team Leader at ESIS, wrote to Black & Decker's attorney enclosing what he referred to as "the Cost-Sharing Agreement" for the Mississippi Hearing Loss claim. (Attached hereto as Exhibit I.) Without question, and irrespective of any futile attempt by Black & Decker to call into question Mr. Schlemmer's memory or credibility, the parties reached cost-settlement agreements that apply to these LTE claims.

Black & Decker further attempts to obscure the real issue before the Court by setting out in charts what it claims are the amounts owed by Liberty Mutual for the defense costs in connection with these three LTE claims. These charts are inaccurate and misleading in that they claim to represent the total defense costs incurred by Black and Decker for each claim rather than the appropriate calculation of those costs attributable to Liberty Mutual under the cost-sharing agreements described above. Notably, Black & Decker must, and does, acknowledge that Liberty Mutual already paid for a percentage of the defense costs for each of the claims. Indeed, Liberty Mutual made these payments to satisfy completely the percentage of total defense costs owed by Liberty Mutual for each claim according to the applicable cost sharing agreement.[3] Therefore, Black & Decker's manipulation

---

[3] Liberty Mutual made these payments after being given an opportunity to review the invoices paid by Black & Decker in connection with the defense of these claims.

of the figures to suggest that nearly $4 million is owed by Liberty for the defense of these claims is unsupported by the facts.

The Court must look beyond Black & Decker's latest attempt to confuse the issues related to the ultimate question of whether Liberty Mutual has assumed the defense costs for these three LTE claims by entering and acting consistent with the cost-sharing agreements. Black & Decker apparently does not now wish to be bound by the terms of agreements it entered prior to this litigation. Nothing included in Black & Decker's submission, however, changes the facts or the analysis the Court should conduct to determine whether summary judgment is appropriate.

For these reasons, Liberty Mutual requests that this Court decline to accept the supplemental submission by Black & Decker, or, alternatively, disregard the irrelevant arguments and factual assertions contained therein, and award summary judgment on behalf of Liberty Mutual with respect to these three claims.

Respectfully submitted,

LIBERTY MUTUAL INSURANCE COMPANY

By its attorneys,

_____
Ralph T. Lepore, III (BBO #294420)
Harold T. Potter (BBO #404240)
James M. Tierney (BBO #644945)
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA 02116
(617) 523-2700

Dated: May 5, 2004

CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of May, 2004, I caused a copy of the foregoing document to be served by hand upon Jack R. Pirozzolo, Esq., counsel to defendants, at Willcox, Pirozzolo and McCarthy, P.C., 50 Federal Street, Boston, MA 02110.

_____
Ralph T. Lepore, III

# 1905811_v1